O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW HAMPSHIRE BALL BEARINGS, INC., a corporation,<br><br>        Plaintiff,<br><br>  v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., a corporation; CHARTIS CLAIMS, INC., a corporation,<br><br>        Defendants.<br>_____ | Case No. CV 13-06114 DDP (AGRx)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT<br><br>[DKT. NOS. 27, 32] |

Presently before the Court are Plaintiff's Motion for Partial Summary Judgment (Docket No. 27) and Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment (Docket No. 32). For the reasons stated in this Order, Plaintiff's Motion is DENIED and Defendant's Motion is GRANTED.

**I. Background**

Defendant National Union Fire Insurance Company of Pittsburgh, PA ("Defendant")issued an Employment Practices Liability Insurance policy (the "Policy") to Plaintiff New Hampshire Ball Bearings, Inc. ("Plaintiff" or "NHBB"), covering the period June 19, 2011

through June 19, 2012. (Plaintiff's SUF, Docket No. 39, ¶ 2; Defendant's SUF, Docket No. 37-2, ¶ 17.) The Policy contains language stating that it covers "Employment Practices Violation(s)," which are defined as:

    (1) wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

    (2) harassment (including sexual harassment whether "quid pro quo", hostile work environment, or otherwise);

    (3) discrimination, (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation preference, pregnancy, or disability);

    (4) Retaliation (including lockouts);

    (5) employment-related misrepresentation(s) to an Employee or applicant for employment with the Company or an Outside Entity;

    (6) employment-related libel, slander, humiliation, defamation or invasion of privacy;

    (7) wrongful failure to employ or promote;

    (8) wrongful deprivation of career opportunity, wrongful demotion or negligent Employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

    (9) wrongful discipline;

    (10) failure to grant tenure;

    (11) failure to provide or enforce adequate or consistent corporate policies and procedures relating to any Employment Practices Violation;

    (12) violation of an individual's civil rights relating to any of the above,

    (13) with respect to any of the foregoing subparagraphs (1) through (12) above and subject to all terms and conditions and exclusions of the policy: negligent Employee hiring, supervision or retention, or infliction of emotional distress or mental anguish.

(Docket No. 32-2, Exh. 3.) The Policy also contains the following relevant exclusion, as amended by Endorsement #2:

    The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:

    (j) for violation(s) of the responsibilities, obligations or duties imposed by ... the Fair Labor Standards Act, ... any rules or regulation of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law.

    It is acknowledged that Claims for violation(s) of any of the responsibilities, obligations or duties imposed by "similar federal, state, local or foreign statutory law or common law," as such quoted language is used in the immediately-preceding paragraph, include, without limitation, any and all Claims which in whole or in part allege, arise out of, are based upon, are attributable to, or are in any way related to any of the circumstances described in any of the following:

```
            (1) the refusal, failure or inability of any Insured(s)
                to pay wages or overtime pay (or amounts representing
                such wages or overtime pay) for services rendered or
                time spent in connection with work related activities
                (as opposed to tort-based back pay or front pay damages
                for torts other than conversion);
            (2) improper deductions from pay taken by any
                Insured(s) from any Employee(s) or purported
                Employee(s); or
            (3) failure to provide or enforce legally required meal
                or rest break periods;
        Notwithstanding the foregoing, this exclusion (j) shall not
            apply to the extent that a Claim is for Retaliation.
```
(Id.)

On April 18, 2012, Edgar Batres filed suit against Plaintiff on behalf of a putative class in Los Angeles Superior Court, Case No. BC 482999 (the "Batres Suit"). (P's SUF ¶ 7; D's SUF ¶ 1.) The Batres Suit alleged the following causes of action: (1) violation of Labor Code § 204 (failure to pay wages for hours worked); (2) violation of Labor Code § 510 (failure to pay overtime); (3) violation of Labor Code §§ 1194, 1194.2, 1197, 1197.1 (failure to pay minimum wage); (4) violation of Labor Code § 226(a) (inaccurate wage statements); (5) violation of Labor Code §§ 201-203 (unpaid wages at discharge); and (6) violations of Bus. & Prof. Code § 17200 et seq. (Docket No. 32-2, Exh. 1.) On May 2, 2012, Plaintiff tendered the Batres Suit to Defendant under the Policy. (P's SUF ¶ 9.) On June 8, 2012, Defendant denied coverage to Plaintiff for the Batres Suit, asserting that the allegations

4

of that suit did not allege an "Employment Practices Violation" as defined in the Policy. (P's SUF ¶ 10.) On June 21, 2012 and August 29, 2012, Plaintiff sent letters to Defendant seeking reconsideration of the denial of coverage; Defendant maintained its position that the claims in the Batres Suit were not covered. (P's SUF ¶¶ 12-13.)

An amended complaint was filed in the Batres Suit in February 2013, alleging the same causes of action as the original complaint. (P's SUF ¶ 15; D's SUF ¶ 2.) Plaintiff then tendered the amended complaint to Defendant under the Policy. (P's SUF ¶ 16.) On April 1, 2013, Defendant again denied coverage under the Policy. (P's SUF ¶ 19.)

At some point in 2013, Plaintiff settled the Batres Suit for a maximum settlement of $1,250,000. (D's SUF ¶ 15.) Plaintiff seeks indemnity for the costs of its defense of that suit and the settlement under the Policy. (D's SUF ¶ 16.)

**II. Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party.

5

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

    A. Duty to Defend

    Both parties seek summary judgment on Plaintiff's cause of action for breach of contract based on Defendant's duty to defend. On a duty to defend claim, an insurer has an obligation to defend its insured on a claim if the claim "*potentially* seeks damages within the coverage of the policy." Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 (1966). "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993). Any doubt as to whether the facts give rise to a duty to defend must be resolved in the insured's favor. Id. Once the duty to defend attaches, the insurer must defend all claims involved in the action, both covered and noncovered, until the insurer can demonstrate that a specific portion of the defense costs are attributable to a noncovered claim. Id.

    The summary judgment analysis for a duty to defend claim therefore differs from the traditional analysis. If there is any genuine issue of fact as to whether the Policy covers the claims in the Batres Suit, the Court must grant summary judgment in favor of Plaintiff on this cause of action, as Defendant had a duty to defend the claims upon the mere potential for coverage. However, if there is no factual dispute and no possibility of coverage for any of the claims in the Batres Suit under the Policy, then the Court must grant summary judgment in favor of Defendant.

In determining whether the Policy covers the claims in the Batres Suit, the provisions of the Policy are "interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] exclusionary clauses are interpreted narrowly against the insurer." MacKinnon v. Truck Ins. Exch., 31 Cal. 4th 635, 648 (2003) (quoting White v. Western Title Ins. Co., 40 Cal. 3d 870, 881 (1985)). Whether a defense obligation exists is determined by comparing the allegations of the complaint with the terms of the policy, as well as extrinsic facts known to the insurer, at the inception of the third-party lawsuit. Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 295 (1993). Claims are liberally construed to determine whether they are covered by an insurance policy. Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co., 307 F.3d 944, 951 (9th Cir. 2002). However, the duty to defend is not absolute, and courts will not use a strained construction of a policy to impose liability upon an insurer that it has not assumed. Dyer v. Northbrook Prop. & Cas., 210 Cal. App. 3d 1540, 1547 (1989). Further, "[a]n insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." Gunderson v. Fire Ins. Exchange, 37 Cal. App. 4th 1106, 1114 (1995).

The underlying factual allegations on which the Batres Suit premised all of its claims allege that several specific payment practices of NHBB were illegal and that those practices constituted violations of multiple labor code provisions. The Batres Suit alleges that NHBB "adopted a uniform policy and practice of (i) 'rounding' or 'shaving' time recorded as worked by

... the Class and (ii) automatically deducted thirty (30) minutes of time worked by ... the Class on the assumption that such employees were provided with a full thirty (30) minute meal period, when in fact such employees may have received a shorter meal period or no meal period at all." (Docket No. 32-2, Exh. 2, ¶ 12(a).) The Batres Suit also alleges "the failure to pay the correct amount of regular, overtime and minimum wages" and "the failure to include non-discretionary bonuses in the calculation of the regular rate of pay for overtime purposes." (Id. at ¶¶ 12(d), 12(e).)

Plaintiff argues that the following allegations in the Batres Suit give rise to a duty to defend, as they raise the possibility that the claims are covered by the Policy: (I) damages were suffered by the Class as a result of NHBB's uniform policies and procedures; (II) NHBB's uniform policies and procedures governing working conditions caused the Class to suffer; (III) NHBB violated § 226 by providing inaccurate itemized wage statements; and (IV) NHBB violated §§ 201-203 by failing to pay non-discretionary bonuses. Plaintiff argues that these allegations indicate that the claims may be covered as "Employment Practices Violations." Specifically, Plaintiff argues that the allegations regarding "NHBB's uniform policies and procedures" qualify under § 2(h)(11) of the Policy, which states that "failure to provide or enforce adequate or consistent corporate policies and procedures relating to any Employment Practices Violation" constitutes an Employment Practices Violation. Further, Plaintiff argues that the inaccurate wage statement allegations are covered under § 2(h)(5) of the Policy, which states that "employment-related misrepresentation(s)

9

to an Employee or applicant for employment with the Company or an Outside Entity" constitute Employment Practices Violations. Finally, Plaintiff argues that the allegations regarding failure to pay non-discretionary bonuses are covered under both § 2(h)(5) and § 2(h)(11).

With respect to Plaintiff's first argument regarding the "policies and procedures" allegations, Plaintiff appears to ignore the fact that such policies and procedures must be "relat[ed] to ... an Employment Practices Violation" in order to be covered under the Policy. The only "policies and procedures" that the complaint references relate to the specified underlying labor code violations regarding failure to pay wages. Therefore, the duty to defend does not arise under the Policy by virtue of these statements in the pleadings, as Plaintiff does not identify any facts supporting the existence of allegedly deficient policies and practices that would qualify as Employment Practices Violations.

Plaintiff's arguments that some of the allegations in the Batres Suit can be construed as "employment-related misrepresentations" need not be addressed. Even assuming that the Court construed the claims in the Batres Suit regarding the wage statement inaccuracies as falling within § 2(h)(5) of the Policy, Exclusion 4(j) clearly applies to these claims. The exclusion specifically precludes coverage for "any and all Claims which in whole or in part allege, arise out of, are based upon, are attributable to, or are in any way related to any of the circumstances described in any of the following: (1) the refusal, failure or inability of any Insured(s) to pay wages or overtime pay (or amounts representing such wages or overtime pay) for

services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion); (2) improper deductions from pay taken by any Insured(s) from any Employee(s) or purported Employee(s); or (3) failure to provide or enforce legally required meal or rest break periods."

"California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions." Acceptance Ins. Co. v. Syufy Enterprises, 69 Cal. App. 4th 321, 328 (1999). This language "connotes only a minimal causal connection or incidental relationship." Id.; see also Continental Cas. Co. v. City of Richmond, 763 F.2d 1076, 1081 (1985) ("The claim need bear only an incidental relationship to the injury to come within the exclusionary clause of the ... policy.").

The Batres Suit claims for inaccurate wage statements and the failure to pay non-discretionary bonuses arise directly from a "failure to pay wages ... for ... time spent in connection with work related activities" and/or "improper deductions from pay." The Batres Suit cites to no facts that give rise to any inference that the suit sought to allege any other misrepresentations, separate and apart from incorrect amounts of overtime pay and non-discretionary bonuses, based on the allegations that NHBB inappropriately rounded or shaved employee time and improperly deducted 30 minute meal breaks from employee pay. Therefore, contrary to Plaintiff's assertion, the claims in the Batres Suit for inaccurate wage statements and the failure to pay non-discretionary bonuses are excluded from coverage under the Policy

11

by Exclusion 4(j). Therefore, Defendant had no duty to defend such claims.[1]

Plaintiff also argues that extrinsic evidence, in the form of the deposition of Edgar Batres (the "Batres Deposition"), gives rise to potential additional claims that would clearly fall within the Policy's coverage. Plaintiff argues that the Batres Deposition establishes the potential for claims of to age-related harassment, failure to treat employees with respect, wrongful termination, and infliction of emotional distress.

There are multiple reasons why Plaintiff's argument is unpersuasive here. First, there are no facts or claims contained in the original complaint or the First Amended Complaint in the Batres Suit that contain any suggestion, much less any allegation, that Plaintiff intended to pursue claims based on harassment, failure to treat employees with respect, wrongful termination, or infliction of emotional distress. "[T]he insured may not speculate about unpled third party claims to manufacture coverage." Hurley Construction Co. v. State Farm Fire & Casualty Co., 10 Cal. App. 4th 533, 538 (1992). Because the complaint contains no indication that Batres intended to pursue any such claims on behalf of the putative class, Defendant is not required to defend the action on

---

[1] Plaintiff argues that claims under § 226(a) and §§ 201-203 of the Labor Code have been held to be dissimilar to FLSA claims and therefore not excluded by language excluding all FLSA or similar claims. See California Dairies, Inc. v. RSUI Indemnity Co., 617 F. Supp. 2d 1023 (E.D. Cal. 2009). However, Exclusion 4(j) contains additional, specific language that broadens the causes of action that may be excluded under the provision by including any claim that "relates to" a "failure to pay wages" or "improper deductions from pay." Therefore, Plaintiff's argument that these Labor Code provisions are dissimilar from FLSA provisions is unavailing in light of the additional, specific exclusionary language contained in the Policy.

12

mere speculation that Batres might amend his complaint to include additional claims or facts when there is no indication that Batres intended to do so.

Second, the Batres Deposition, reasonably construed, does not contain any facts that give rise to a "potential" harassment, failure to treat employees with respect, wrongful termination, or infliction of emotional distress claim. Plaintiff does not point to any specific statements made in the Batres Deposition, other than Mr. Batres's statement that he "had worked there for so many years, and [he] suffered so much stress from the two [supervisors] ... [T]hey were looking for the most minor detail in order to be able to fire [him]." (Docket No. 47, Exh. 8, at 22.) This statement, without more, does not give rise to potential liability under the Policy. An employee's statement that he suffered "stress" and that his supervisors were looking to fire him over a minor issue does not give rise to a potential claim for harassment or wrongful termination.[2] Plaintiff cites to no other extrinsic evidence that Defendant should have considered in determining whether it had a duty to defend the Batres Suit. Therefore, because the allegations in the complaint are either not covered as "Employment Practices Violations" or are excluded by Exclusion

---

[2] Further, any allegation that Mr. Batres suffered "stress" at work, and that the stress was somehow linked to an allegation of wrongful termination, harassment, or infliction of emotional distress, would not be susceptible to resolution in a class action, as those allegations pertain only to Mr. Batres. There is no indication that other employees experienced similar stress or harassment, or that Mr. Batres's testimony intended to assert that such wrongs occurred on a classwide basis. As the Batres Suit was a putative class action, it was therefore even less likely that Mr. Batres would seek to amend to add claims that likely could not be proven on a classwide basis.

13

4(j), and because the Batres Deposition does not establish any basis for potential liability that would be covered by the Policy, the Court finds that there is no potential for liability under the Policy such that Defendant's duty to defend was triggered. Therefore, the Court DENIES Plaintiff's Motion for Partial Summary Judgment in its entirety and GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's duty to defend claim.

### B. Duty to Indemnify and Bad Faith

Because the Court has already determined that Defendant had no duty to defend because there was no genuine dispute as to whether the claims in the Batres Suit were covered by the Policy, there was clearly no duty on the part of Defendant to indemnify Plaintiff for the settlement amount. Therefore, the Court GRANTS summary judgment in favor of Defendant on that claim. Furthermore, in the absence of a breach of the Policy, there can be no bad faith by Defendant for failing to defend. See Progressive West Ins. Co. v. Yolo County Superior Court, 135 Cal. App. 4th 263, 278 (2005) (citing Love v. Fire Ins. Exchange, 221 Cal. App. 3d 1136, 1151 (1990)). Therefore, the Court GRANTS summary judgment in favor of Defendants on that claim.

## IV. Conclusion

For the foregoing reasons, the Court DENIES Plaintiff's Motion and GRANTS Defendant's Motion in its entirety.

IT IS SO ORDERED.

Dated: March 10, 2014

DEAN D. PREGERSON
United States District Judge